James **THOMAS**, Plaintiff,

v.

Frank **IRVIN**, et al., Defendants.

No. 95–CV–1049S(H).

United States District Court,
W.D. New York.

Nov. 10, 1997.

James Thomas, Gowanda, NY, for Plaintiff.

Mary C. Baumgarten, Asst. Atty. Gen., William Lonergan, Office of the Atty. Gen., Buffalo, NY, for Defendants.

## ORDER

SKRETNY, District Judge.

Whereas, this Court, by order filed June 4, 1996, referred all dispositive motions to the Hon. Carol E. Heckman, United States Magistrate Judge for the Western District of New York, pursuant to 28 U.S.C. § 636(b)(1)(B);

Whereas, on November 1, 1996 Magistrate Judge Heckman filed an order which directed that any summary judgment motion should be filed on or before January 6, 1997, and that any response to a summary judgment motion should be filed on or before March 3, 1997;

Whereas, on January 6, 1997, Defendants moved for summary judgment pursuant to Federal Rule of Civil Procedure 56;

Whereas, Plaintiff never responded to the Defendants' motion for summary judgment;

Whereas, on October 7, 1997, Magistrate Judge Heckman filed a Report and Recommendation, copies of which were mailed to the parties by the Clerk of the Court on October 7, 1997, recommending that this Court grant Defendants' motion for summary judgment and dismiss Plaintiff's Complaint;

Whereas no objections to the Report and Recommendation were received from the Plaintiff within ten (10) days from the date of its service, in accordance with 28 U.S.C. § 636(b)(1) and Local Rule 72.3; and

Whereas, after careful review of the Report and Recommendation, as well as the pleadings and materials submitted by the parties;

IT HEREBY IS ORDERED, that this Court accepts Magistrate Judge Heckman's Report and Recommendation in its entirety, including the authorities cited and reasons given therein, and that Defendants' motion for summary judgment is GRANTED.

FURTHER, that the Clerk of the Court is directed to enter final judgment in favor of the Defendants and against the Plaintiff.

SO ORDERED.

## REPORT AND RECOMMENDATION

HECKMAN, United State Magistrate Judge.

This matter was referred to the undersigned by Hon. William M. Skretny, to hear and report, in accordance with 28 U.S.C. § 636(b). Defendants have moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the following reasons, it is recommended that defendants' motion be granted.

### *BACKGROUND*

Plaintiff filed this action on December 13, 1995. He alleges that, while he was an inmate at the Wende Correctional Facility maintained by the New York State Department of Correctional Services ("DOCS"), he was confined to "drug watch" for 7 days in a room with inadequate ventilation, in violation of his constitutional rights. He seeks compensatory and punitive damages, pursuant to 42 U.S.C. § 1983, against Wende Superintendent Frank Irvin, Deputy Superintendent Donald Wolff, an unidentified Corrections Officer, and an unidentified nurse.

The following facts are not in dispute.[1] On November 24, 1994, plaintiff was visited at Wende by Kathleen Nudd. At the time, plaintiff was serving a sentence of 3 to 9 years for attempted burglary in the second degree. After the visit, defendant Wolff (then Deputy

---

1. Plaintiff has not responded to defendants' summary judgment motion. Fed. R. Civ. P. 56(e) provides as follows:

 When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

 In addition, defendants have submitted a "Statement of Undisputed Facts Pursuant to Local Rule 56" (Item 16). Under Rule 56 of the Local Rules of Civil Procedure for the Western District of New York, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed admitted unless controverted by the statement required to be served by the opposing party."

Superintendent of Security at Wende) authorized the placement of plaintiff on "drug watch" in a "temporary isolation room" in the facility's infirmary (Item 22, ¶ 8). This authorization was based on information received by Deputy Superintendent Wolff from a confidential informant that plaintiff was "in possession of narcotics and razor blades" after his visit with Ms. Nudd (*id.*, Ex. B). Plaintiff's inmate records also demonstrate a history of drug possession and use during incarceration (*id.*, ¶ 13 & Exs. H & I).

The isolation room in the Wende infirmary is 8 feet wide and 11.5 feet long, with 11 foot ceilings. It is larger than the average cell at Wende (Item 22, ¶ 18). During plaintiff's drug watch, the room was equipped with a bed mattress, pillow, bed linen, blanket, hand towel, bedpan and portable toilet seat (*id.*, ¶ 10 & Ex. D). The two air vents in the room were covered as a security measure to prevent inmates from concealing contraband in the vents (*id.*, ¶ 19).

The procedures for "Drug & Special Watches—Temporary Isolation" are set forth at DOCS Directive 4910(IV)(I), which authorizes the placement of an inmate in a temporary isolation cell or room "when there is 'probable cause' to believe that the inmate has either ingested a contraband item or inserted a contraband item into the rectal cavity" (Item 22, Ex. C). Directive 4910(IV)(I) also sets forth the following drug watch procedures:

 a. The toilet water supply shall be turned off.

 b. The inmate shall remain isolated for a period not to exceed 48 hours unless:

 1) a defecation containing contraband occurs, in which case the inmate will be retained until two negative defecations occur; or

 2) defecation does not occur within 48 hours, in which case the inmate will be retained until two negative defecations occur; or

 3) a radiological detection search . . . indicates the presence of a contraband item which remains in the inmate's body. In this case, the temporary isolation may continue for up to 72

hours with the written approval of the superintendent or his/her designee.

 c. In any case where the temporary isolation period exceeds 24 hours, a member of the facility health services staff shall visit the inmate once every 24 hours.

 d. A chronological log shall be maintained which shall include, but not be limited to, visits by medical and/or other staff, negative defecation, defecation containing contraband, Unusual Incidents, or an incident relative to the situation.

(Item 22, Ex. C; *see also* DOCS Policy and Procedure No. 2411, Item 22, Ex. D).

As indicated in the chronological drug watch log attached to the Wolff affidavit, plaintiff was confined to drug watch at 2:30 p.m. on November 24, 1994 (Item 22, Ex. G, p. 14). He did not defecate until 10:05 a.m. on November 29, 1994. (*id.*, p. 29). The log indicates that this was "not of large enough quantity/size to qualify" as a "negative defecation" under Directive 4910(IV)(I)(b) (*id.*, p. 30). Plaintiff defecated again at 1:10 p.m. on November 29 (*id.*). This defecation was negative for contraband (*id.*). Plaintiff again defecated "very little" at 8:12 p.m. on November 29 (*id.*, p. 31). According to the log entry, "very little quantity will not do-have to be a lot" (*id.*). Plaintiff did not defecate again until 4:07 p.m. on December 2, 1994 (*id.*, p. 40). No contraband was found, and plaintiff was released from drug watch on December 2 (*id.;* Item 16, ¶ 47).

Plaintiff claims that his confinement to the isolation room between November 24 and December 2, 1994 resulted in a violation of his rights under the eighth and Fourteenth Amendments to the United States Constitution. Defendants move for summary judgment on the following grounds:

 1. The conditions complained of do not meet the standards applicable to claims under either the Eighth or Fourteenth Amendment;

 2. Defendants Irvin and Wolff were not personally involved in the alleged constitutional violations; and

3. Irvin and Wolff are entitled to qualified immunity.

Each of these grounds is addressed in turn below.

### *DISCUSSION*

#### I. Summary Judgment.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In reaching this determination, the court must assess whether there are any material factual issues to be tried while resolving ambiguities and drawing reasonable inferences against the moving party, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986); *Coach Leatherware Co., Inc. v. AnnTaylor, Inc.*, 933 F.2d 162, 166–67 (2d Cir.1991), and must give extra latitude to a *pro se* plaintiff. *McDonald v. Doe*, 650 F.Supp. 858, 861 (S.D.N.Y.1986).

Once the moving party has met its burden of demonstrating the absence of a genuine issue of material fact, the nonmoving party must come forward with enough evidence to support a jury verdict in its favor, and cannot rest on "mere allegations or denials" of the facts asserted by the movant. Fed.R.Civ.P. 56(e); *accord Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525–26 (2d Cir.1994); *Higgins v. Artuz*, 1997 WL 466505, at *3 (S.D.N.Y. August 14, 1997).

#### II. 42 U.S.C. § 1983.

■ 42 U.S.C. § 1983 provides:

Every person who, under any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

To state a viable claim under § 1983, plaintiff must show that prison officials were acting under color of state law and their actions deprived plaintiff of a right guaranteed by the constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981); *Bryant v. Maffucci*, 923 F.2d 979, 982–83 (2d Cir.), *cert. denied*, 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991).

■ As an initial matter, it is noted that a prison inmate does not have a viable § 1983 claim based solely on prison officials' failure to adhere to the requirements of prison regulations, directives or policy statements. *See Patterson v. Coughlin*, 761 F.2d 886, 891 (2d Cir.1985)("state employee's failure to conform to state law does not in itself violate the Constitution and is not alone actionable under § 1983."); *see also Kingwood v. Coombe*, 1997 WL 323913, at *2 (S.D.N.Y. June 13, 1997). Even if plaintiff could make such a claim, the record clearly shows that the procedures set forth in DOCS Directive No. 4910(IV)(I) and Policy & Procedure No. 2411 were adhered to by all Wende personnel involved in plaintiff's drug watch. Therefore, to the extent that plaintiff's unverified complaint can be construed to state a claim for relief under § 1983 based on Wende officials' failure to release him after two negative defecations, as set forth in DOCS Directive No. 4910(IV)(I)(4)(b)(2) and Policy & Procedure No. 2411(VI)(C)(1)(b), that claim should be dismissed as a matter of law.

#### A. Due Process.

■ Construing plaintiff's pleadings liberally, and "interpret[ing] them to raise the strongest arguments that they suggest ...," *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994), plaintiff claims that his seven-day "drug watch" confinement in the infirmary isolation room resulted in violations of his rights under the due process clause of the Fourteenth Amendment. In order to succeed on this claim, plaintiff must show that he possessed a liberty or property interest protected by the United States Constitution or federal statutes and, if so, that he was deprived of that interest without due process of law. *See, e.g., Logan v. Zimmerman*

*Brush Co.,* 455 U.S. 422, 428, 102 S.Ct. 1148, 1153, 71 L.Ed.2d 265 (1982); *Green v. Bauvi,* 46 F.3d 189, 194 (2d Cir.1995). Applying this standard to the record in this case, I find that plaintiff has failed to make this required showing.

In *Sandin v. Conner,* 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the Supreme Court determined that neither Hawaii state prison regulations nor the due process clause itself created a liberty interest for a prison inmate, who was serving an indeterminate term of 30 years to life, in avoiding thirty days' disciplinary confinement in a Special Holding Unit ("SHU"). After reviewing the development of the methodology for analyzing inmates' due process claims, derived from its holdings in such cases as *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), *Meachum v. Fano,* 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976), and *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), the court held:

> The time has come to return to the due process principles we believe were correctly established and applied in *Wolff* and *Meachum.* Following *Wolff,* we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such a manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

*Sandin v. Conner, supra,* 515 U.S. at 483–84, 115 S.Ct. at 2299–300 (citations omitted). In so holding, the Court abandoned its previous methodology, explicitly adopted in *Hewitt,* which required courts to examine prison regulations in order to determine whether the state had used "language of an unmistakably mandatory character" such that no incursion on the inmate's liberty could occur "absent specified substantive predicates." *Hewitt v. Helms, supra,* 459 U.S. at 471–72, 103 S.Ct. at 870–71.

Applying this revised methodology, courts in the Second Circuit have consistently found that short periods of punitive or administrative confinement in areas removed from the general prison population does not constitute an atypical, significant hardship implicating a protected liberty interest. *See, e.g., Frazier v. Coughlin,* 81 F.3d 313 (2d Cir.1996)(12 days prehearing confinement and 30 days in Close Supervision Unit did not implicate protected liberty interest); *Odom v. Keane,* 1997 WL 3262 (S.D.N.Y. January 6, 1997)(46 days in "keeplock" did not implicate liberty interest); *Luis v. Coughlin,* 935 F.Supp. 218 (W.D.N.Y.1996) (same for 33–day keeplock); *Schmelzer v. Norfleet,* 903 F.Supp. 632 (S.D.N.Y.1995)(same for 11–day keeplock); *Jackson v. Keane,* 1995 WL 622593 (S.D.N.Y. October 24, 1995)(14–day keeplock); *Kozlek v. Papo,* 1995 WL 479410 (S.D.N.Y. August 11, 1995)(10–day confinement in SHU was not an atypical, significant hardship); *Eastman v. Walker,* 895 F.Supp. 31 (N.D.N.Y. 1995)(New York's keeplock regulations do not create protectable liberty interest); *Uzzell v. Scully,* 893 F.Supp. 259 (S.D.N.Y. 1995)(23–day keeplock).

In addition, the Second Circuit has recently held that, in order to determine whether a prisoner has a liberty interest in avoiding a particular type of confinement, the court "must examine the circumstances of a confinement to determine whether that confinement affected a liberty interest . . .," *Miller v. Selsky,* 111 F.3d 7, 9 (2d Cir.1997), and "should identify with specificity the facts upon which its conclusion is based." *Brooks v. DiFasi,* 112 F.3d 46, 49 (2d Cir.1997).

■ Upon examination of the conditions of plaintiff's confinement as set forth in the record before the court, and in light of the authority cited above, plaintiff's due process claim in this case should be dismissed. The undisputed record shows that the room in which plaintiff was confined during his drug watch is larger than the average cell at Wende. It was equipped with all of the essential items necessary for proper rest and hygiene. Plaintiff was allowed to exercise and smoke cigarettes, and he received regular meals and daily medical attention. In

fact, plaintiff requested and received additional food, liquids, and laxatives.

In addition, defendants have come forward with substantial penological justification for imposing drug watch confinement in this case. It is undisputed that the proliferation of contraband narcotics trade within DOCS institutions presents a serious threat to the safety and security of staff and inmates. It is also undisputed that information obtained from inmate informants is a useful and necessary tool in addressing this institutional problem, and the need for confidentiality is obvious. In light of plaintiff's institutional record of drug use and possession, there can be no question in this case as to the reasonability of defendants' assessment of the credibility of the information provided by the confidential informant.

Based on this record, which is not controverted by the allegations in plaintiff's unverified complaint, I find that "the State's actions in placing [plaintiff in drug watch isolation] ... for [seven] days did not work a major disruption in his environment." *Sandin, supra,* 515 U.S. at 486, 115 S.Ct. at 2301. Plaintiff has failed to show "that the conditions of his confinement in the [isolation room] were dramatically different from the 'basic conditions of [his] ... sentence.'" *Frazier v. Coughlin, supra,* 81 F.3d at 317 (quoting *Sandin, supra,* 515 U.S. at 485, 115 S.Ct. at 2300). Accordingly, he has failed to demonstrate that his seven-day drug watch confinement implicated a liberty interest protected by the due process clause of the Fourteenth Amendment.

### B. Eighth Amendment.

■ Plaintiff also claims that his confinement in the unventilated isolation room violated his Eighth Amendment right to be free from cruel and unusual punishment. The Eighth Amendment's prohibition against cruel and unusual punishment includes an inmate's right to be free from conditions of confinement that impose "an excessive risk to [the] inmate['s] health or safety...." *Farmer v. Brennan,* 511 U.S. 825, 837, 114 S.Ct. 1970, 1978, 128 L.Ed.2d 811 (1994); *Hathaway v. Coughlin,* 37 F.3d 63 (2d Cir.1994), *cert. denied sub nom. Foote v. Hathaway,* 513 U.S. 1154, 115 S.Ct. 1108, 130 L.Ed.2d 1074 (1995).

■ In order to establish that this right has been violated, the inmate must satisfy a two-part test. The first part of the test is objective, and requires the inmate to show that he is incarcerated under conditions posing a substantial risk of serious harm. *Farmer v. Brennan, supra,* 511 U.S. at 834, 114 S.Ct. at 1977 (quoting *Wilson v. Seiter,* 501 U.S. 294, 298, 111 S.Ct. 2321, 2323, 115 L.Ed.2d 271 (1991)). As stated by the Supreme Court:

> It also requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate.

*Helling v. McKinney,* 509 U.S. 25, 35, 113 S.Ct. 2475, 2481, 125 L.Ed.2d 22 (1993).

■ The second prong of the test is subjective and requires the inmate to show that the official had a "sufficiently culpable state of mind." *Farmer, supra,* 511 U.S. at 834, 114 S.Ct. at 1977 (quoting *Wilson, supra,* 501 U.S. at 297, 111 S.Ct. at 2323). The inmate must establish that the official acted or failed to act with deliberate indifference to the inmate's health or safety:

> [A] prison official does not act in a deliberately indifferent manner unless that official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."

*Hathaway v. Coughlin, supra,* 37 F.3d at 66 (quoting *Farmer, supra* at 837, 114 S.Ct. at 1978). Mere negligence or inadvertence on the part of the official does not violate the constitution. *Cole v. Scully,* 1995 WL 231250 at *4 (S.D.N.Y. April 18, 1995); *see also Duncan v. Keane,* 1997 WL 328070 (S.D.N.Y. June 13, 1997).

■ In this case, the undisputed facts clearly demonstrate that the conditions in the isolation room during plaintiff's drug watch

confinement did not place him at a substantial risk of serious harm. Plaintiff was examined on a daily basis during his drug watch, as required by DCCS Directive No. 4910(IV)(I)(4)(c) and Policy & Procedure No. 2411(VI)(C)(d). His ambulatory health records reflect that he complained about a sore throat. but he did not complain about or show any symptoms of respiratory problems (Item 20, Ex. A). Medical staff found no physical abnormalities (*id.*). The record also shows that plaintiff was physically active during the entire period of his drug watch, and that he smoked cigarettes in the isolation room (Item 22, Ex. G).

In addition, there is no proof in the record to show that Wende officials acted in knowing disregard of an excessive risk to plaintiff's health or safety. On the contrary, the record shows that plaintiff's status was checked and recorded every fifteen minutes during his seven-day confinement. He received daily medical attention. The door to the isolation room was opened on a regular basis, allowing for adequate ventilation.

Accordingly, I find that plaintiff has failed to establish a violation of his Eighth Amendment rights.

### III. Personal Involvement.

■ In order to state a claim for relief under § 1983 against a particular defendant, a plaintiff must show that defendant's personal involvement in the purported unlawful conduct. *Williams v. Smith*, 781 F.2d 319, 322 (2d Cir.1986); *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir.1977), *cert. denied*, 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978).

A defendant may be personally involved in a constitutional violation within the meaning of 42 U.S.C. § 1983 in several ways. The defendant may have directly participated in the infraction.... A supervisory official, after learning of the violation through a report or appeal, may have failed to remedy the wrong.... A supervisory official may be liable because he or she created a policy or custom under which unconstitutional practices occurred, or allowed such a policy or custom to continue.... Lastly, a supervisory official may

be personally liable if he or she was grossly negligent in managing subordinates who caused the unlawful condition or event. *Williams v. Smith, supra*, 781 F.2d at 322–24 (citing cases).

■ In this case, as the discussion above demonstrates, there is no evidence in the record to show that defendants Irvin or Wolff engaged in any unconstitutional conduct, either directly or in a supervisory capacity. Neither defendant was directly involved in the drug watch. There is no evidence in the record to suggest that defendants Irvin or Wolff were advised about any health risk to plaintiff resulting from poor ventilation in the isolation room, or that they were advised but failed to take any action. Likewise, there is no evidence to suggest that the facility had a policy of exposing inmates to excessive health or safety risks during drug watches, that defendants knew about such a policy and allowed it to continue, or that defendants were grossly negligent in managing subordinate employees.

In the absence of any proof of unconstitutional conduct on the part of defendants Irvin and Wolff in either a direct or supervisory capacity, defendants are entitled to summary judgment dismissing the complaint on the ground of lack of personal involvement.

### IV. Qualified Immunity.

■ Defendants also move for summary judgment on the ground of qualified immunity. State officials performing discretionary functions in the course of their duties are immune from liability for money damages in suits alleging constitutional violations "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)(quoted in *Russell v. Coughlin*, 910 F.2d 75, 78 (2d Cir.1990)). Even when such rights are clearly established, qualified immunity will protect a government official "if it was objectively reasonable for [the official] to believe that his [or her] acts did not violate those rights." *Robi-*

*son v. Via,* 821 F.2d 913, 921 (2d Cir.1987); *Russell, supra,* 910 F.2d at 78; *Gittens v. LeFevre,* 891 F.2d 38, 42 (2d Cir.1989). "The objective reasonableness test is met—and the defendant is entitled to immunity—if 'officers of reasonable competence could disagree' on the legality of the defendant's actions." *Lennon v. Miller,* 66 F.3d 416, 420 (2d Cir.1995)(quoting *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986)).

Thus, a defendant is entitled to summary judgment on qualified immunity grounds where the court determines as a matter of law that it was objectively reasonable for the defendant to believe that his or her conduct or actions did not violate an established federally protected right. *Lennon, supra,* 66 F.3d at 420. "In other words, if any reasonable trier of fact could find that the defendants' actions were objectively unreasonable, then the defendants are not entitled to summary judgment." *Id.*

 In this case, the record clearly demonstrates that it was objectively reasonable for defendants to conclude that confining plaintiff to isolated drug watch until two substantial negative defecations occurred did not violate plaintiff's due process rights or his right to be free from cruel and unusual punishment. As discussed above, there is no evidence to suggest that the conditions of the isolation room during plaintiff's seven-day drug watch confinement constituted an atypical, significant hardship implicating a protected liberty interest, or that defendants Irvin or Wolff acted in knowing disregard of an excessive risk to plaintiff's health or safety. In light of this record, no reasonable trier of fact could conclude that the actions taken by defendants were objectively unreasonable under the circumstances. Accordingly, defendants are entitled to summary judgment on qualified immunity grounds.

### CONCLUSION

For the foregoing reasons, it is recommended that defendants' motion for sum-

1. Apfel is substituted as a party defendant for his predecessor in office, John J. Callahan. *See* Fed.

mary judgment (**Item 14**) be granted, and the case dismissed.

Sept. 7, 1997.

**SO ORDERED.**