George M. CHAVIS, 91–A–3261, Plaintiff,

v.

G. STRUEBEL and R. Cunningham, Defendants.

No. 00–CV–0097 SR.

United States District Court, W.D. New York.

March 29, 2004.

---

George M. Chavis, Upstate Correctional Facility, Malone, NY, pro se.

Stephen F. Gawlik, Assistant Attorney General, Buffalo, NY, for Defendants.

### DECISION AND ORDER

SCHROEDER, United States Magistrate Judge.

Pursuant to 28 U.S.C. § 636(c), the parties have consented to the assignment of this case to the undersigned to conduct all proceedings in this case, including the entry of final judgment. Dkt.# 21.

Plaintiff commenced this action *pro se,* pursuant to 42 U.S.C. § 1983, alleging that numerous defendants denied him his rights under the First and Fourteenth Amendments to the United States Constitution. Dkt. # 1. Plaintiff's complaint was dismissed with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(b) and 1915A by Order of the Court entered February 22, 2000. Dkt. # 3. Pursuant to the Mandate of the Court of Appeals for the Second Circuit, plaintiff's retaliation claims against defendants Cunningham and Struebel were reinstated. Dkt. # 6.

Plaintiff alleges that while he was incarcerated at the Attica Correctional Facility ("Attica"), defendant Cunningham "confiscated my sealed legal envelope—censored it then retaliated against [me] with a 120 day keeplock ticket after my grievance against him for violating my legal mail on 10–3–97," and that defendant Struebel "threatened my health/life with a false schizophrenia mental record after my grievances." Dkt. # 1.

Currently before the Court is defendants' motion for summary judgment (Dkt.# 54), and plaintiff's motion to serve a request for admissions upon the defendants. Dkt. # 64. For the following reasons, defendants' motion is granted and plaintiff's motion is denied.

### BACKGROUND

By letter dated October 7, 1997 and stamped received by "Attica Corr. Facility

1st Dep Supt." on October 8, 1997, plaintiff wrote the following:

Dear Mr. McCray,

During the cell search of 25–tier on 10–3–97, two *un* known racist officers entered my cell specifically by order of Sgt. Cunningham and "stole" several items belonging to me (my # 6—college pens—they are assorted color clip on types, and my two Disposable cig-lighters!). Additionally, # 5 of my *sealed* legal envelopes were "Ripped" open, and read (*one* of my legal letters to the Commission on Corrections" had been confiscated and *never* returned! After the cell search/theft of my property and violation of all my legal mail, had been completed, I was called down to the Sgts office where two plainclothes civilians had interviewed me concerning my legal letter confiscated (to the Commissioner for Corrections."). Sgt. Cunningham is a *racist,* white *K.K.K. Bastard,* and sooner or later he will be dealt with accordingly.

Dkt. # 53, Exh. A.[1] On a separate piece of paper, which is undated and does not bear a received stamp, plaintiff writes:

Mr. McCray,

Notice that after you'd taken (actively on), vacation, all of a sudden there's a "up rising" within this racist hell hole! Vigilante officers, are clearly *not* fit to wear correctional uniforms.

Sooner or later, I will get even with those # 2 white, redneck, racist, thieves who search my cell, stole my property, opened all of my legal mail (in sealed envelopes!), and tossed my new Hot Pot

into the trash, th[e]n exited my cell w/ my legal letter in hand!

Dkt. # 53, Exh. A.[2]

In response to these letters, Lt. Cunningham avers that First Deputy Superintendent McCray ordered him to meet with plaintiff. Dkt. # 53, ¶ 4. Lt. Cunningham met with plaintiff on October 14, 1997, at which time plaintiff admitted that he was the author of the letter, but refused to comment about his intentions with respect to the threats contained in the letters. Dkt. # 53, ¶ 5. In response to these threats, Lt. Cunningham wrote a misbehavior report charging plaintiff with violating the following rules: threats in writing (102.10); harass employees in writing including insolent, abusive and/or obscene language (107.11); and lying/ false statements (107.20). Lt. Cunningham avers that

At the time I wrote the misbehavior report, I was not aware of any grievance filed by plaintiff against me. Nor was the misbehavior report written in retaliation for any such grievance. Furthermore, even if I was aware of a grievance, due to the express threats made in the letter to Deputy Superintendent McCray, I would have issued the misbehavior report. While plaintiff, as well as all other inmates, have the right to complain and file grievances about any problem they claim to have with me or other officers, they do not have the right to make threats against staff or threaten to riot.

Dkt. # 53, ¶ 9.

Following a tier II[3] disciplinary hearing

---

1. An additional line of this letter is partially cut off and is not legible. Lt. Cunningham avers that this line states "Sgt Cunningham is a dirty piece of filth, too!!" Dkt. # 53, ¶ 5.

2. An additional line of this letter is partially cut off and is not legible.

3. New York Codes, Rules and Regulations provides three levels of disciplinary hearings for violating prison rules: tier I hearings address the least serious infractions and impose a maximum punishment of loss of privileges such as recreation; tier II hearings address more serious infractions and may result in 30 days confinement in the Special Housing Unit ("SHU"); and tier III hearings involve the

before Lt. Brekon on October 20, 1997, plaintiff was found guilty of making threats and writing false statements and sentenced to thirty days keeplock and 30 days loss of packages, phone privileges, and commissary, plus imposition of an additional 3 months keeplock and loss of phone privileges which had been suspended from a prior disciplinary hearing.[4] Dkt. # 53, Exh. C.

In support of the motion for summary judgment, defendant Struebel, Inmate Grievance Program Supervisor at Attica, submitted an affidavit stating that

> A review of the records kept by DOCS with respect to inmate grievances shows that plaintiff did not file any grievance on October 3, 1997 concerning a cell search and/or the confiscation of his legal mail. Moreover, the records also reveal that from October 3, 1997 until October 14, 1997, the date the misbehavior report was issued by Sgt. Cunningham, plaintiff did not file a grievance concerning the incident or against Sgt. Cunningham.

Dkt. # 55, ¶ 4. Plaintiff did file a grievance against Lt. Cunningham on October 17, 1997 claiming "that the disciplinary report issued on October 14, 1997 was issued in retaliation for plaintiff filing a grievance on October 3, 1997." Dkt. # 55, ¶ 7. That grievance was denied because plaintiff had not filed a grievance on October 3, 1997 and because of the nature of the letter that was the subject of the disciplinary report. Dkt. # 55, ¶ 7. Specifically, the Central Office Review Committee determined the following:

> You claim that you were retaliated against for filing a grievance, but you

filed no grievance on the October 3 incident. You sent a letter directly to myself that was referred to your area Sergeant for investigation. Your responses to the Sergeant were not satisfactory and he issued you a misbehavior report based on the threats and information you included in that letter. You were found guilty of two separate charges; you appealed the disposition; and I upheld those findings. There was no retaliation for filing a grievance but you were held accountable for written threats which you personally addressed to [Thomas Eagan, Assistant Director, Inmate Grievance Program].

Dkt. # 55, Exh. A.

Plaintiff commenced an Article 78 proceeding with respect to this determination. Dkt. # 63, Exh. A. By Order dated July 14, 1998, the Hon. Mark H. Dadd, Acting Supreme Court Justice, Supreme Court, Wyoming County, expressed that he was "uncomfortable with the fact that this disciplinary action arose from a correction officer confronting an inmate with written complaints raised against him," but denied plaintiff's petition for failure to demonstrate that the commissioner's hearing officer conducted the disciplinary hearing in a less than fair and impartial manner, which was the sole legal claim raised by plaintiff. Dkt. # 63, Exh. A.

With respect to plaintiff's second claim, defendant Struebel avers that "DOCS has no such thing as [a] 'schizophrenia report'" and that he "did not file any 'schizophrenia report' against plaintiff." Dkt. # 55, ¶ 5. Moreover, although Struebel does not recall making a referral to the

---

most serious violations and may result in SHU confinement up to the remaining term of confinement as well as recommended loss of good time credits. *See McEachin v. McGuinnis,* 357 F.3d 197, 199, n. 1 (2d Cir. 2004).

4. Plaintiff had been found guilty of making threats at a disciplinary hearing on July 30, 1997. Dkt. # 28, Exh. B.

Mental Health Unit with respect to plaintiff, he states that any such referral would not involve any diagnosis, but would simply request that the Mental Health Unit assess "what if any action need be taken." Dkt. # 55, ¶ 6. Defense counsel avers that he has reviewed plaintiff's mental health records and determined that there is no indication that Struebel ever made such a referral. Dkt. # 54, ¶ 15. Plaintiff did not file a grievance against Struebel. Dkt. # 55, ¶ 8.

In response to discovery demands, plaintiff asserts that defendant Struebel made "*threats* of *false* mental health reports against" plaintiff with the goal of

> debilitating my character *prior* to federal court [trial], in producing me, as a plaintiff far reaching, over emotional, *un* stable 'mentally,' and everything else negative that would compell [sic] court officials into misleading/inaccurate judgment against me, as a solidly profound plaintiff, in this case, and others.

Dkt. # 54, Exh. B. Plaintiff further explained that he had

> stated clearly that the defendant G. Struebel had "threatened" to formulate a false mental health report in alleged schizophrenia against me, I never have stated he did do it (although I have no idea if this has been done by this manipulative defendant!). However, G. Struebel could have committed this negative act against me, as it had certainly been his previous threat to me, in addition, to forcing me into a mental assylum [sic] for the criminally insane!

Dkt. # 54, Exh. B. Plaintiff reiterates that he "had never stated the defendant G. Struebel had issued any such 'schizophrenia report' in retaliation for plaintiff's filing of grievances" but had stated that the defendant

> on the date of 12–9–97, had threatened a "false" mental health report in psychological schizophrenia if the plaintiff con-

tinued to file facility grievances in addition to external written complaints to state legal offices exposing interdepartmental officer and civilian staff corruption against state prisoners within Attica.

Dkt. # 61. In response to defendants' interrogatories, plaintiff states that these comments were made while plaintiff was in SHU confinement. Dkt. # 54, Exh. B.

## ANALYSIS

### Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "In reaching this determination, the court must assess whether there are any material factual issues to be tried while resolving ambiguities and drawing reasonable inferences against the moving party, and must give extra latitude to a pro se plaintiff." *Thomas v. Irvin*, 981 F.Supp. 794, 799 (W.D.N.Y.1997) (internal citations omitted).

A fact is "material" only if it has some effect on the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see Catanzaro v. Weiden*, 140 F.3d 91, 93 (2d Cir.1998). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *see Bryant v. Maffucci*, 923 F.2d 979 (2d Cir.), *cert. denied*, 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991).

Once the moving party has met its burden of "demonstrating the absence of a genuine issue of material fact, the nonmov-

ing party must come forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely upon a 'metaphysical doubt' concerning the facts, or on the basis of conjecture or surmise." *Bryant*, 923 F.2d at 982. A party seeking to defeat a motion for summary judgment

> must do more than make broad factual allegations and invoke the appropriate statute. The [party] must also show, by affidavits or as otherwise provided in Rule 56 of the Federal Rules of Civil Procedure, that there are specific factual issues that can only be resolved at trial.

*Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir.1995).

Pursuant to Fed.R.Civ.P. 56(e), affidavits in support of or in opposition to a motion for summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Thus, affidavits "must be admissible themselves or must contain evidence that will be presented in an admissible form at trial." *Santos v. Murdock*, 243 F.3d 681, 683 (2d Cir.2001), *citing Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also H.Sand & Co. v. Airtemp Corp.*, 934 F.2d 450, 454–55 (2d Cir.1991) (hearsay testimony that would not be admissible if testified to at trial may not properly be set forth in an affidavit).

### *Retaliation Claim Against Lt. Cunningham*

Defendant Cunningham argues that plaintiff did not file a grievance against him prior to the issuance of the misbehavior report. Dkt. # 52, p. 7. Moreover, defendant Cunningham asserts that the threats contained in the letter dated October 7, 1997 are not constitutionally protected conduct and that such threats would have justified the issuance of a misbehav-

ior report regardless of the context in which they were written. Dkt. # 52, p. 8.

Interpreting *pro se* plaintiff's response in a manner most helpful to his claim, plaintiff appears to allege that he had written a grievance regarding defendant Cunningham's interference with plaintiff's legal mail prior to and separate from the October 7th letter underlying Lt. Cunningham's misbehavior report. Dkt. # 63, ¶ 2; *see also* Dkt. # 28, Exh. B.

> An allegation that a prison official filed false disciplinary charges in retaliation for the exercise of a constitutionally protected right, such as the filing of a grievance, states a claim under § 1983. A plaintiff alleging retaliatory punishment bears the burden of showing that the conduct at issue was constitutionally protected and that the protected conduct was a substantial or motivating factor in the prison officials' decision to discipline the plaintiff. The burden then shifts to the defendant to show that the plaintiff would have received the same punishment even absent the retaliatory motivation. The defendant can meet this burden by demonstrating that there is no dispute that the plaintiff committed the most serious, if not all, of the prohibited conduct charged in the misbehavior report.

*Gayle v. Gonyea*, 313 F.3d 677 (2d Cir. 2002) (internal quotations and citations omitted).

Regardless of whether plaintiff had previously filed a grievance against Lt. Cunningham, or whether plaintiff filed a formal grievance on an Inmate Grievance Complaint form, the letter dated October 7, 1998 provided Lt. Cunningham with clear notice that plaintiff had complained about him to the First Deputy Superintendent McCray. Having made a decision to allow the subject of a complaint to investigate that complaint, DOCS cannot credibly

claim that the individual investigating the complaint lacked motive to retaliate against the complainant.

■ However, even assuming retaliatory motive, defendant Cunningham is entitled to summary judgment because there are "proper, non-retaliatory reasons for his punishment." *Graham v. Henderson*, 89 F.3d 75, 81 (2d Cir.1996). The letter written by plaintiff is clearly threatening. Plaintiff does not dispute that he wrote the October 7, 1997 letter threatening to "get even with" the two corrections officers who searched his cell and to "deal with" Lt. Cunningham for being a "a *racist*, white *K.K.K. Bastard.*" Dkt. # 53, Exh. A. Thus, the most serious charge against plaintiff is undeniable.

### *Retaliation Claim Against Struebel*

Defendant Struebel argues that, even assuming that he did "threaten" to refer plaintiff for mental health services, such a statement does not establish a constitutional violation. Dkt. # 52, p. 10. Plaintiff responds that defendant Struebel threatened "the plaintiff's safety, life and health by a false mental health report if the plaintiff did not cease written complaints in writing [sic] . . . ." Dkt. # 63, ¶ 10.

"To survive summary dismissal, a plaintiff asserting First Amendment retaliation claims must advance non-conclusory allegations establishing: (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir.2001), *overruled on other grounds, Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002).

With respect to the second prong, it is clear that although "the scope of conduct that can constitute actionable retaliation in the prison setting is broad, it is not true that every response to a prisoner's exercise of a constitutional right gives rise to a retaliation claim." *Id.* at 492–93. Thus,

> Only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes and adverse action for a claim of retaliation. Otherwise, the retaliatory act is simply *de minimus* and therefore outside the ambit of constitutional protection. This objective inquiry is not static across contexts, but rather must be tailored to the different circumstances in which retaliation claims arise. Prisoners may be required to tolerate more than public employees, who may be required to tolerate more than average citizens, before a [retaliatory] action taken against them is considered adverse.

*Id.* at 493 (internal quotations and citations omitted).

■ In *Dawes*, for example, the Court of Appeals for the Second Circuit determined that conclusory allegations that corrections officers referred to plaintiff "as an 'informant' and a 'rat' for filing the grievance against defendant opened him up to assault from his fellow inmates" were insufficient to conclude that a reasonable prisoner would have been deterred from the exercise of his constitutional rights. *Id.* Insulting, disrespectful, or sarcastic comments are considered *de minimus*. *See Davis v. Goord*, 320 F.3d 346, 353 (2d Cir.2003). Spreading rumors about an inmate has also been deemed insufficient. *Williams v. Muller*, 2001 WL 936297, at *4 (S.D.N.Y. Aug.17, 2001). In contrast, transferring an inmate to another housing unit or to a psychiatric facility or assigning the inmate a less desirable work assignment satisfies the adverse action requirement. *See Maxwell v. City of New York*, 272 F.Supp.2d 285, 301 (S.D.N.Y.2003) (citing cases); *Walker v. Pataro*, 2002 WL

664040, at *8 (S.D.N.Y. April 23, 2002) (citing cases).

■ In the instant case, plaintiff's allegations against defendant Struebel, interpreted generously, fail to rise above the *de minimus* adverse action threshold. Plaintiff does not claim that he was transferred to a psychiatric unit, subjected to psychiatric treatment against his will or even subjected to a mental evaluation as a result of Struebel's comments. Plaintiff does not allege that he was stigmatized as having a psychiatric illness or ridiculed by other corrections officers or inmates as a result of Struebel's comments. In fact, Struebel's comments were interpreted by plaintiff as an attempt to adversely effect plaintiff's credibility before this Court rather than to adversely affect the conditions of plaintiff's incarceration. Accordingly, plaintiff's claims with respect to defendant Struebel fail to demonstrate adverse action and must be dismissed.

### Request for Sanctions

In light of the Court's determination, defendants' alternative arguments need not be addressed. *See* Dkt. # 52. However, plaintiff should be forewarned that his threatening, vulgar letter to defendants' counsel, in response to a direct order of this Court, provides an independent basis upon which plaintiff's complaint could have been dismissed. Dkt. # 54, Exh. C; *see Peker v. Fader*, 965 F.Supp. 454 (S.D.N.Y. 1997).

### Request for Admissions

The Court has reviewed plaintiff's request for admissions and determined that none of the requests would alter the Court's analysis of defendants' motion for summary judgment. Accordingly, in light of the Court's determination with respect to defendants' motion for summary judgment, plaintiff's request for admissions is denied.

### CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment (Dkt.# 51), is **GRANTED** and plaintiff's motion for permission to serve requests for admissions (Dkt.# 64), is **DENIED**. The Clerk of the Court is directed to enter judgment in favor of defendants.

The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962). Further requests to proceed on appeal as a poor person should be directed, on motion, to the United States Court of Appeals for the Second Circuit, in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

**SO ORDERED.**